**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARIE AGEE,**
on behalf of A.J.A.M.,

       **Plaintiff,**

  v.                       **Civil Action 2:19-cv-5399
Judge Michael H. Watson
Magistrate Judge Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

       **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Marie Agee, acting on behalf of A.J.A.M., a minor, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying A.J.A.M.'s application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

    I.    **BACKGROUND**

Plaintiff is A.J.A.M.'s aunt and legal guardian, who protectively filed an application for SSI on A.J.A.M.'s behalf on March 31, 2016, alleging that he was disabled beginning September 1, 2011. (Doc. 9, Tr. 510–15). After her application was denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a hearing on March 7, 2018. (Tr. 390–438). On October 16, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 368–89). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 11–17).

Plaintiff, who is proceeding *pro se*, filed the instant case seeking a review of the Commissioner's decision on December 10, 2019 (Doc. 1), and the Commissioner filed the administrative record on March 6, 2020 (Doc. 9). This matter is now ripe for consideration. (*See* Docs. 10, 11).

### A. Factual Background

A.J.A.M. was born in 2006 (Tr. 374), and Plaintiff has had custody of him since birth, (Tr. 518–21). Plaintiff initially applied for benefits on A.J.A.M.'s behalf when he was six-months-old. (Tr. 459).

### B. Relevant Hearing Testimony

At the time of the administrative hearing, A.J.A.M. was 11-years-old and in the fifth grade. (Tr. 403). A.J.A.M. testified that he lives with his aunt and older brother. (Tr. 404). He testified that, when he is not in school, he likes to play basketball. (*Id.*). He receives help at school with reading, science, and math; he doesn't like reading because it's "boring." (*Id.*; Tr. 405). Similarly, he testified that he receives help at home with his homework. (Tr. 409). When asked about his relationships at school, A.J.A.M. testified that he has a lot of friends and "sometimes" gets along with his teachers. (Tr. 405–06). Recently, however, he has had received "a lot" of detentions for being disrespectful and not listening. (Tr. 406). Along these same lines, A.J.A.M. testified that, at times, he has been disciplined for fighting on the bus. (*Id.*). When asked about use of his inhaler for asthma, he testified he uses it rarely and only with sports. (Tr. 409).

As for his home life, A.J.A.M. testified that he sees his mom "every now and then," about once a month. (Tr. 407). But those visits last no more than five minutes because Plaintiff, as Plaintiff later testified, does not want A.J.A.M. and his brother to be around their mother "because she's still dealing in it." (Tr. 418). At home, he performs household chores such as cleaning, mopping, sweeping, and walking the dog. (Tr. 410).

For her part, Plaintiff testified that A.J.A.M. takes attention deficit hyperactivity disorder (ADHD) medication "for his behavior, the way he acts, his reaction[s]." (Tr. 420–21). Plaintiff also testified that A.J.A.M. had issues with his teammates last year but is getting along with them better this year. (Tr. 422). She then testified about A.J.A.M.'s behavioral problems at school and how she changed his school because she thought the new school had a better curriculum. (Tr. 422–26). Plaintiff also testified that she keeps A.J.A.M. and his brother on a routine; as part of that routine, A.J.A.M. can brush his teeth and dress himself. (Tr. 427–30).

## II. The ALJ's Decision

The ALJ first found that A.J.A.M. was a school-age child when the application was filed and remained a school age child as of the date of the decision. (Tr. 374). Next, he found that A.J.A.M. had not engaged in substantial gainful activity since his application date. (*Id.*). At the next step of the sequential evaluation process, the ALJ concluded that A.J.A.M. has severe impairments including asthma, ADHD, and oppositional defiant disorder (ODD). (*Id.*). He also found that A.J.A.M.'s impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments, or functionally equal those requirements. (Tr. 374–75).

The ALJ then reviewed A.J.A.M.'s educational records, medical records, and the opinion evidence. (Tr. 371–85). Relevant here, he reviewed the opinion evidence of the state agency consultants:

> As for the opinion evidence, the initial assessment of the state agency consultants suggested a less than marked limitation in acquiring and using information (domain 1) and in interacting and relating to others (domain 3), and no limitations in the other domains. Only partial weight to this opinion evidence, as the evidence supports more limitation in many of these domains [].
>
> On reconsideration, the state agency consultants raised interacting and relating to others to a marked limitation, left acquiring and using information as less than marked, and raised attending and completing (domain 2) and caring for yourself (domain 5) to less than marked. Moving and manipulating objects (domain 4) and

3

>health and physical well-being (domain 6) remained no limitation. Significant weight is given to this opinion evidence which is better supported than the lesser limitations suggested on initial consideration overall; however, the record does support a less than marked limitation in health and physical well-being with asthma a severe impairment. Therefore, less weight to the state agency assessments as to that domain. The teacher opinion at Exhibit B4E was also given partial weight considering her familiarity with the claimant despite being an unacceptable source for medical opinion evidence.

(Tr. 376).

In reviewing the six domains of functioning that are pertinent to a child's benefits application, the ALJ found that A.J.A.M. has "less than marked limitations" in the domains of "acquiring and using information," "attending and completing tasks," "caring for yourself," and "health and physical well-being." (Tr. 379–84). The ALJ further found that A.J.A.M. has a "marked limitation" in the domain of "interacting and relating with others" but "no limitations" in the domain of "moving about and manipulating objects." (*See id.*). Because a finding of at least one "extreme" limitation or two "marked" limitations is needed to support an award of benefits, the ALJ denied Plaintiff's claim. (Tr. 384).

### III. STANDARD OF REVIEW

To qualify for SSI as a child under the age of 18, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

4

1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
> (1) Acquiring and using information;
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for yourself; and
> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results:
>
> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

5

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

In the context of that legal framework, this Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## IV.    DISCUSSION

Plaintiff, who is proceeding *pro se*, has filed a five-page, handwritten statement of errors, generally listing Plaintiff's academic and social difficulties. (*See generally* Doc. 10). Because Plaintiff does not set forth a specific assignment of error, the Court will construe her statement of errors liberally and assume that Plaintiff is asserting, as a general matter, that the ALJ's decision is unsupported by substantial evidence. *See Works ex rel. A.R.W. v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 690, 697 (S.D. Ohio 2012). Specifically, given the content of Plaintiff's statement of errors, the Undersigned will broadly construe it as challenging the ALJ's step two findings, as well as the ALJ's findings with regard to the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. And, because Plaintiff focuses on

A.J.A.M.'s mental health issues and not his asthma, (*see generally* Doc. 10), the Undersigned will limit her analysis to the same.

**A. Step Two Severity Finding**

While not entirely clear, it appears that Plaintiff may be challenging the ALJ's severity findings. (*See generally* Doc. 10). For example, Plaintiff notes that A.J.A.M. suffers from several mental disabilities, including learning and behavioral disabilities, an anxiety and mood disorder, and ADHD. (*Id*. at 2–4).

At step two of the sequential analysis, the ALJ found that A.J.A.M. has severe mental health impairments—ADHD and oppositional defiance disorder. (Tr. 374). Since the ALJ found at least one impairment, the ALJ was required to consider the functional limitations of all severe and non-severe impairments throughout the rest of the sequential analysis. 20 C.F.R. § 416.923. And that is what the ALJ did.

When considering the functional limitations caused by Plaintiff's mental health impairments, the ALJ noted A.J.A.M.'s ADHD diagnosis, anger outbursts, and medication and treatment history. (Tr. 379). The ALJ considered the fact that A.J.A.M.'s teacher completed a questionnaire and noted findings consistent with less than marked limitations. (*Id*.). The ALJ also noted that, when A.J.A.M.'s medications were last increased, his focus and concentration improved. (*Id*.). The ALJ further noted that A.J.A.M.'s aunt reported that he is a good student. (*Id*.). Thus, despite his diagnoses of ADHD and oppositional defiance disorder, the ALJ found that A.J.A.M. is not disabled. (Tr. 379–80).

As for Plaintiff's assertions that A.J.A.M. has a learning disability, the ALJ noted that A.J.A.M. has an individualized education plan ("IEP") and struggles with reading and writing. (Tr. 378). But despite the fact that A.J.A.M.'s grades were, at times, low, the ALJ concluded that

7

there was no indication in the record of any significant learning problems other than his delay in reading and writing, noting that his low grades resulted in part from his failure to complete or turn in assignments. (*Id.*). Accordingly, the ALJ considered whether A.J.A.M.'s learning difficulties would affect his ability to function, and Plaintiff has shown no error as a result.

As for Plaintiff's assertions regarding A.J.A.M.'s depression and anxiety, Plaintiff bears the burden to show that these conditions were disabling. *Stevens v. Astrue*, 839 F. Supp. 2d 939, 949 (S.D. Ohio Jan. 23, 2012). But the record reveals that Plaintiff denied that A.J.A.M. had symptoms of these mental health conditions, nor is there evidence of these conditions having been diagnosed. (*See, e.g.*, Tr. 1130, 1141, 1159, 1166); *see also Stevens*, 839 F. Supp. 2d at 949 ("Plaintiff bore the responsibility of not merely producing a diagnosis of an impairment, but of demonstrating correlative functional limitation."). Regardless, the ALJ considered A.J.A.M.'s general mental health limitations and how they impacted his ability to function at school, at home, and in his community. For example, the ALJ considered A.J.A.M.'s normal mental status exam results (*see, e.g.*, Tr. 379) and adjustments to his medication regimen, which corresponded with improvements in A.J.A.M.'s behavior and mood, (*see id.*; *see also* Tr. 379 (noting that, by January 2017, A.J.A.M. was doing well academically, behaving at home, and having minimal problems at school)).

In sum, the ALJ considered the functional impact of A.J.A.M.'s mental health difficulties in the remaining steps of his sequential analysis. And Plaintiff has failed to show that the ALJ erred.

### B. Functional Domains

As noted, the Undersigned construes Plaintiff's statement of errors as also challenging the ALJ's findings regarding the domains of acquiring and using information, attending and

completing tasks, and interacting and relating with others. The Undersigned considers each domain in turn.

### 1. *Acquiring and Using Information*

The domain of acquiring and using information considers how well children perceive, think about, remember, and use information in all settings, including daily activities at home, school, and in the community. 20 CFR § 416.926a(g); SSR 09-3p. The ALJ concluded that A.J.A.M. has a "less than marked" limitation in this domain. (Tr. 377).

Plaintiff does not raise a specific argument as to the ALJ's analysis of this domain. Rather, she asserts simply that A.J.A.M. is "on a 3rd grade level of learning but [is] in the 7th grade." (Doc. 10 at 3). The record does not support that assertion, and Plaintiff has not produced any new evidence to corroborate this claim or show that A.J.A.M.'s academic record has deteriorated since the hearing. To the contrary, she states that she "ha[s] given all evidence to prove [her] case" and there is "nothing lacking, nothing missing." (*Id*. at 5). Plaintiff also asserts that A.J.A.M. "has short term memory" and "cannot remember things for a long period of time"—"very forgetful." (*Id*. at 3).

In evaluating A.J.A.M.'s educational records and teacher questionnaires, the ALJ noted that A.J.A.M. "is behind a grade level for reading and writing but at grade level for math." (Tr. 377). The ALJ elaborated on these records:

> He had a thorough evaluation and testing with the supervising psychologist and psychology assistant concluding that "cognitive ability alone will not serve as a significant impediment to the claimant's learning and education," with no specific educational needs identified (B1F/5). He received a core language score in the average range with the speech pathologist concluding that his language skills would not adversely affect his academic performance and that his scores did not meet the criterion for a speech-language disorder (B1F/12).

(*Id*.).

9

Based on his educational records and teacher questionnaire, the ALJ concluded that A.J.A.M. has a less than marked limitation in the domain of acquiring and using information. He explained:

> The teacher questionnaire is consistent with a less than marked limitation in this domain, with his deficits in this domain limited to reading and writing skills. He only had an obvious problem with understanding school and content vocabulary *at grade level*, reading and comprehending at grade level and expressing ideas in written form, with the teacher adding the italicized words. In explanation, this teacher wrote that the claimant continues to confuse the b and d in reading and writing and looks to an alphabet card prior to writing (B4E). Her opinion is consistent with a less than marked limitation and given some weight. His 5th grade report card reveals that the claimant received a D and then F due to "missing all journal work and most of red folder work," and received an A in music, C in math, B in Science and a pass in physical education. As for social studies he earned an A and then F which suggests poor performance just that quarter and in that class. As for recent grades, the claimant said he received poor grades for failing to get work done as well as not understanding it. His guardian did indicate that she had to ask teachers to send homework home so he will do it. Thus, the claimant's failure to do homework or complete and turn in work has been considered with regard to his grades. His individual education plan (IEP) reports did indicate that the claimant likes to be helpful to the other students in his class and likes for them to see him as a leader, so when opportunities presented themselves for him to help other students who struggled with reading, he did try his best to do so (B11F/4).
>
> Thus, the evaluations, individual education plan (IEP), teacher reports and claimant's testimony reveal that the claimant struggles primarily with reading and writing and has made some progress with more work needed. While grades are low at times in other areas, there is no indication of any significant learning problems other than his delay in reading and writing. He has admitted consistent with the record that lower grades result at least in part from his failure to do or turn in completed work.
>
> Significant weight is given to the opinions from the state agency consultants, who found the claimant to be less than marked in this domain, and to the teacher report that also suggests a less than marked limitation.

(Tr. 377–78).

Further, as the Commissioner notes, all of the state-agency reviewing psychologists and medical sources determined that A.J.A.M. has a less than marked limitation in this domain. (Tr. 378 (citing Tr. 463, 474–75)).

Upon review of the ALJ's thorough analysis and the evidence relevant to this domain, including IEPs, teacher reports, and opinion evidence, the Undersigned concludes that the substantial evidence supports the ALJ's finding that A.J.A.M. has a less than marked limitation in this domain. Plaintiff's general assertion, unsupported by corroborating evidence, that A.J.A.M. is in the seventh grade but learning at a third-grade level does not warrant remand.

### 2. *Attending and Completing Tasks*

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. (Tr. 378 (citing 20 CFR § 416.926a(h); SSR 09-4p)). This domain also refers to a child's ability to avoid impulsive thinking and prioritize completing tasks and managing his time. (*Id.*).

Plaintiff asserts that A.J.A.M. "cannot control [his] behavior" and "can[not] sit still always moving." (Doc. 10 at 3). She further asserts that "[h]is attention span is short" and that he is "easily [ ] distracted." (*Id.*). Again, Plaintiff does not attempt to introduce new evidence in the record to potentially warrant a remand, nor does she describe how the ALJ erred in his assessment of the relevant evidence.

In considering the domain of attending and completing tasks, the ALJ considered the opinion evidence and educational records relevant to this domain:

> As for this domain, this questionnaire is consistent with a less than marked limitation with the only obvious problems checked of refocusing to task when necessary and working without distracting others, with the caveat that if the claimant is upset or angry, he has these issues. Significant weight to this opinion evidence which is supported by a teacher familiar with the claimant. The claimant's individual education plan (IEP) noted that the claimant had scored clinically significant for aggression and only at risk for hyperactivity, conduct problems, somatization and study skills, with the aggressive behavior interfering the most with his academic progress (B6F/3, B11F/9).

11

(Tr. 379).

Relatedly, the ALJ considered records pertaining to A.J.A.M.'s ADHD diagnosis:

> Records from Nationwide Hospital reveal a diagnosis of Attention Deficit Hyperactivity Disorder after reports of symptoms of inattentive and hyperactive/impulsive behavior, with the claimant and his Aunt consenting to the start of medication for these symptoms. Anger outbursts had also been mentioned with the claimant to continue counseling with Directions for Youth and the claimant having a previous diagnosis of oppositional defiant disorder.

(*Id.*).

But the ALJ found that the record showed progress with regard to A.J.A.M.'s ADHD symptoms:

> At the follow-up on July 12, 2016, it was noted that the claimant had been doing well with impulsivity, behavior and mood since starting Concerta and Tenex. His aunt reported that the claimant did very well in school and was on the honor roll with no further behavioral issues by the end of the year after previously having behavioral issues at school with bullying other peers. He was noted to have normal findings on mental status exam other than circumstantial thoughts, including normal cognition, good insight and judgment, euthymic mood, normal behavior, speech and language, cooperative activity and normal psychomotor activity. The claimant's Concerta was increased after the aunt reported that the claimant had been disrespectful to her and his teachers with increased impulsivity and disruptive behaviors which "is not his usual behavior." He was reported as continuing to be a good student. With this increase, the claimant had improved focus and concentration at home and at school, with the claimant helping with chores. She reported continued good academics with behavior at home mostly good and a few minimal problems at school as of January 9, 2017.

(*Id.*).

Further, the ALJ noted that "[s]ubsequent notes reveal complaints [that] largely focused on [A.J.A.M.'s] behavior and difficulty getting along with others," including physical fights. (Tr. 379–80). Similarly, the ALJ noted that "[e]ducational records reveal more problems with social interaction leading to disruptive behavior as opposed to attentional/focus issues." (Tr. 380). Accordingly, the ALJ found that the record "fail[ed] to support a finding of a marked limitation in

12

attending and concentrating, but do lend support to a marked limitation in interacting with others." (*Id.*).

The Undersigned concludes that substantial evidence supports the ALJ's finding with regard to this domain. Upon review of the relevant evidence, the Undersigned notes, as did the ALJ, that A.J.A.M.'s difficulties concentrating and disrupting others appear to emerge when he is upset or angry, (*see, e.g.*, Tr. 544 (noting that A.J.A.M. has difficulty focusing when upset or angry)), and, therefore, appear to stem more from his difficulties interacting with others than any difficulties in concentration or memory, (*see e.g.*, Tr. 379 (citing Tr. 1117, 1125, 1128) (noting that A.J.A.M. was a good student and was, at one point, on the honor roll)). Moreover, as the Commissioner notes, there is no opinion evidence in the record supporting a marked limitation in this domain, and the ALJ's opinion is consistent with the opinion of the state agency consultants, who found that A.J.A.M. has a less than marked difficulty in this domain. (Tr. 475).

In sum, while Plaintiff emphasizes A.J.A.M.'s difficulties with concentrating, the record supports the ALJ's conclusion that these problems reflect A.J.A.M.'s marked limitations in interacting and relating with others.

### 3. *Interacting and Relating with Others*

The domain of interacting and relating with others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. (Tr. 380 (citing 20 CFR § 416.926a(i); SSR 09-5p)). Importantly, interacting and relating with others relates to all aspects of social interaction at home, school, and in the community. 20 CFR § 416.926a(i); SSR 09-5p.

13

As noted, the ALJ concluded that A.J.A.M. has a "marked" but not extreme limitation with regard to this domain:

> The teacher questionnaire previously discussed supports a marked but not extreme level of limitation in this domain with the claimant noted to have a serious problem only in expressing anger appropriately, and an obvious problem in seeking attention appropriately, asking permission appropriately, following rules, and respecting/obeying adults. It was noted that the claimant takes a timeout to calm himself down when angry and sees an outside counselor that comes to school (B4E). According to treatment notes, the claimant was just starting Attention Deficit Hyperactivity Disorder treatment but had already been in counseling, and had improvement in attention and focus with medication but with off and on control of his anger and disruptive conduct issues. School discipline reports support a marked limitation in this domain with the claimant fighting with other students (B11E). At the time of his October 2015 individual education plan (IEP) the claimant was evaluated for social/emotional status with no immediate concerns with the claimant to be watched in the future for his lashing out against others and shutting down. At that time[,] he was able to get along with others (B14F/1). However, a classroom behavior goal was added to his individual education plan (IEP) with the explanation that he struggles with his relationships with others leading him to having a higher frequency of disrespectful behaviors when compared to typical peers. Cited behavior included instigating arguments, threatening harm to others, talking back, leaving the room and refusing to follow directions at times (B17F, B20F).
>
> On reconsideration, this domain was rated as marked by the state agency consultants which is consistent with the treatment records, educational records, teacher questionnaire and reports of the claimant's guardian, with significant weight given to these opinions.

(Tr. 381).

The Undersigned concludes that substantial evidence supports the ALJ's finding as to this domain. Importantly, at the initial stage, the state agency psychological consultants rated this domain as "less than marked," (Tr. 463), but at the reconsideration stage, the state agency consultants, relying on a teacher questionnaire, concluded that A.J.A.M. has "marked" limitations in this domain, (Tr. 475). As the Commissioner notes, no other source opined that Plaintiff has "extreme" limitations in this domain. And Plaintiff makes nothing but conclusory statements

14

regarding A.J.A.M.'s general difficulties of which the ALJ was aware. So Plaintiff has not shown that the ALJ erred.

In sum, substantial evidence supports the ALJ's findings with regard to the above functional domains, and therefore, supports his finding that, because A.J.A.M. did not have a combination of impairments that resulted in "marked" limitations in two domains or an "extreme" limitation in one domain, of functioning, substantial evidence supports the ALJ's conclusion that his impairments did not functionally equal a listing. (Tr. 375–84). And Plaintiff does not argue, and the record does not suggest that A.J.A.M. had greater limitations in the remaining three domains of moving and manipulating objects, caring for yourself, or health and physical well-being.

At base, Plaintiff may not agree with the ALJ's weighing of the evidence and ultimate conclusion. But "if substantial evidence supports the Commissioner's decision," which it does here, "this [C]ourt will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion," *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quotation marks omitted).

## V. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination

of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   July 17, 2020                                /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE